UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL BARBER,

                Plaintiff,

v.

UNKNOWN JENSON, et al.,

                Defendants.

_____/

Case No. 1:24-cv-1160

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's official capacity claims and Eighth Amendment failure to protect claims for failure to state a claim upon which relief

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

may be granted.   Plaintiff's Eighth Amendment excessive force claims against Defendants Wade, Vankrimpen, and Jenson in their individual capacities will remain in the case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility in Freeland, Saginaw County, Michigan.  The events about which he complains occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues LRF Correctional Officers Unknown Jenson, Unknown Wade, and Unknown Vankrimpen in their individual and official capacities. (Compl., ECF No. 1, PageID.1, 2.)

In Plaintiff's complaint, he alleges that he arrived at LRF on January 6, 2023, which was "just days after his brother . . . was transferred" from LRF to another correctional facility.[2]  (*Id.*, PageID.3.)  Plaintiff states that he and his brother "had been charged with the assault of a Michigan State trooper," and that both had "pleaded [guilty] to assault/with attempt to murder."  (*Id.*)

On January 7, 2023, the day after Plaintiff arrived at LRF, Defendant Wade came to Plaintiff's cell and ordered Plaintiff and his cellmate to exit their cell.  (*Id.*) When Plaintiff exited his cell, Defendant Vankrimpen stated: "Yeah that's him; your

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

brother just left here." (*Id.*) Defendant Wade then conducted a shakedown of Plaintiff's person, and Defendant Wade stated: "So you guys like to assault police officers, huh? We'll teach you a lesson about that. Your brother got away but you won't make it home to your mother." (*Id.*) Plaintiff then "turned to ask Wade to repeat what he said," but then Defendants Vankrimpen and Wade "slammed Plaintiff to the ground," and Defendant Vankrimpen "stuck a taser in Plaintiff's face." (*Id.*) At that time, Defendant Wade called in an "assault on staff" on his radio. (*Id.*) Thereafter, multiple officers rushed to the unit, including Defendant Jenson. (*Id.*) Defendant Jenson "began twisting Plaintiff's arm to the point of breaking it, after loud popping sounds could be heard coming from Plaintiff's arm." (*Id.*) Plaintiff tried "to flip over to prevent his arm from being broken and to avoid the pain Jenson was causing." (*Id.*, PageID.3–4.) "After Plaintiff flipped [over], Jenson then put his knee on the right side of Plaintiff's neck, crushing Plaintiff's jugular vein and carotid artery preventing any air flow or blood from reaching Plaintiff's brain for approx[imately] 15–20 seconds," which caused "Plaintiff and other prisoners to yell out 'he can't breathe, you're killing him.'" (*Id.*, PageID.4.) In response, Defendant Jenson said: "Shut the f[***] up; he can't yell if he can't breathe." (*Id.*) Plaintiff then became unconscious, and Defendant Jenson yelled "over and over": "So you like to assault police officers f[***]boy." (*Id.*)

Other non-party staff "then placed Plaintiff's slumped body into the suicide restraint chair and wheeled Plaintiff to seg[regation] while [he was] still unconscious." (*Id.*) "Instead of being immediately placed in healthcare, Plaintiff was

placed in [a] cell[] where Jenson continued to punch Plaintiff multiple times in the face." (*Id.*) Plaintiff states that "at no time did any of the officers attempt to stop Jenson . . . ." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment by using excessive force and failing to protect him.[3] (*Id.*, PageID.5–7.) Plaintiff seeks monetary damages and declaratory relief.[4] (*Id.*, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[3] In this action, Plaintiff specifically lists the claims that he intends to bring in this suit. (Compl., ECF No. 1, PageID.5–7.) When listing his claims, Plaintiff does not list an Eighth Amendment medical care claim. As such, the Court does not construe Plaintiff's complaint to raise such a claim.

[4] As to the declaratory relief that Plaintiff seeks, he states that he seeks "a declaration that the acts and omissions described herein violated his rights under the Constitution of the United States and Michigan law." (Compl., ECF No. 1, PageID.8.) Plaintiff's complaint contains no further reference to any violation of Michigan law, and when listing his claims, Plaintiff does not list any Michigan state law claims. The Court, therefore, does not construe Plaintiff's complaint to raise any state law claims.

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See*

7

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages and declaratory relief. (Compl., ECF No. 1, PageID.8.) However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). And, as noted above, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money

damages.  Therefore, Plaintiff fails to state a claim upon which relief may be granted as to his monetary damages claims against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority.  *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).  A court should assume that, absent an official

policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.  *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again.  Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm.  Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).  Here, Plaintiff is no longer confined at LRF, which is where he avers that Defendants are employed.  Thus, Plaintiff cannot maintain his claims for declaratory relief against Defendants, and the Court will dismiss these claims.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

## B.    Eighth Amendment Excessive Force and Failure to Protect Claims

Plaintiff alleges that Defendants Jenson, Wade, and Vankrimpen used excessive force against him, and that they failed to protect him from the force that was used against him.  (*See* Compl., ECF No. 1, PageID.3–4, 7.)  Specifically, Plaintiff alleges that when he then "turned to ask [Defendant] Wade to repeat what he said

10

[regarding Plaintiff assaulting police officers]," Defendants Vankrimpen and Wade "slammed Plaintiff to the ground," and Defendant Vankrimpen "stuck a taser in Plaintiff's face." (Compl., ECF No. 1, PageID.3.) At that time, Defendant Wade called in an "assault on staff" on his radio. (*Id.*) Thereafter, multiple officers rushed to the unit, including Defendant Jenson. (*Id.*) Defendant Jenson "began twisting Plaintiff's arm to the point of breaking it, after loud popping sounds could be heard coming from Plaintiff's arm." (*Id.*) Plaintiff "attempted to flip over to prevent his arm from being broken," and Defendant Jenson "then put his knee on the right side of Plaintiff's neck, crushing Plaintiff's jugular vein and carotid artery preventing any air flow or blood from reaching Plaintiff's brain for approx[imately] 15–20 seconds." (*Id.*, PageID.3–4.) Plaintiff was subsequently transported to a segregation cell "where Jenson continued to punch Plaintiff multiple times in the face." (*Id.*, PageID.4.) Plaintiff states that "at no time did any of the officers attempt to stop Jenson . . . ." (*Id.*) The Court first addresses Plaintiff's excessive force claims, and then addresses Plaintiff's failure to protect claims.

### 1.    Excessive Force Claims

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*,

503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle*

*v. Gamble*, 429 U.S. 97, 103 (1976)).  Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him.  Here, Plaintiff alleges that Defendants Jenson, Wade, and Vankrimpen each used excessive force against him, and Plaintiff provides supporting facts, which are summarized above, to support this assertion.  Therefore, on initial review, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Jenson, Wade, and Vankrimpen.

## 2.    Failure to Protect Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Deliberate indifference is a higher standard than negligence

and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).  An officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'"  *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

Upon review of Plaintiff's factual allegations, Plaintiff fails to provide any facts from which the Court could conclude that Defendants "had both the opportunity and the means to prevent the harm [inflicted by other Defendants] from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429).  Specifically, Plaintiff's allegations suggest that much of the force used against him occurred quickly.  The Sixth Circuit has held that "where the 'act of excessive force unfolds in a matter of seconds, the second requirement [i.e., having both the opportunity and the means to prevent the harm] is generally not satisfied.'"  *Alexander*, 733 F. App'x at 265 (quoting *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016)); *see Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (collecting cases).  The Sixth Circuit's reasoning for this determination is "that it demands too much of officers to require

14

that they intervene within a sudden and quickly-expired moment of opportunity."
*Pennington*, 644 F. App'x at 548 (citing *Ontha*, 222 F. App'x at 506).

Here, as to Defendants Wade's and Vankrimpen's alleged use of force, Plaintiff does not allege that any other individuals, let alone Defendant Jenson, were present when Wade and Vankrimpen used force against Plaintiff. (*See* Compl., ECF No. 1, PageID.3.) And, Plaintiff fails to allege facts suggesting that the initial uses of force by Defendants Wade and Vankrimpen lasted long enough for Wade or Vankrimpen to both perceive what was going on and intercede to stop the other's use of force. (*See id.*) Moreover, as to Defendant Jenson's alleged use of force, Plaintiff does not allege any *facts* to show that Defendants Wade and Vankrimpen were present during Jenson's uses of force, let alone that they were able to perceive what was going on and intercede to stop the Jenson's uses of force. (*See id.*, PageID.3–4); *see also, e.g.*, *Burgess*, 735 F.3d at 475; *Alexander*, 733 F. App'x at 265. Therefore, under these circumstances, Plaintiff fails to state Eighth Amendment failure to protect claims against Defendants Wade, Vankrimpen, and Jenson.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's official capacity claims and Eighth Amendment failure to protect claims will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth

Amendment excessive force claims against Defendants Wade, Vankrimpen, and Jenson in their individual capacities remain in the case.

An order consistent with this opinion will be entered.


Dated:  November 21, 2024            /s/ Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge